IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Anna Lee Kemp, | ) | Civil Action No. 8:09-3318-JDA |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a final Order pursuant to Local Civil Rules 73.02(B)(1) and 83.VII.02, D.S.C.; 28 U.S.C. § 636(c); the parties' consent to disposition by a magistrate judge; and the Honorable Terry L. Wooten's  March 16, 2010 Order of reference.  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB").  For the reasons set forth below, the decision of the Commissioner is reversed and remanded pursuant to 42 U.S.C. § 405(g) for an award of benefits.

## PROCEDURAL HISTORY

Plaintiff filed an application for DIB in February 2005, alleging disability beginning December 24, 1998.[1]  [R. 82–90.]  Her application was denied initially [R. 27, 58–62] and

---

[1] Plaintiff previously applied for DIB on July 16, 2001, alleging disability beginning December 24, 1998. [R. 92–94.] That application was denied initially and on reconsideration. [R. 28–29, 65–67, 69–73.] Plaintiff did not request a hearing before an ALJ.  [R. 82.]  Hence, the denial of Plaintiff's application on reconsideration became the Commissioner's final decision on Plaintiff's 2001 application. *See* 20 C.F.R. § 404.921; *see also id.* § 404.957(c) (outlining when an ALJ may find there is cause to dismiss a hearing request in its entirety or to refuse to hear an issue).

on reconsideration [R. 26]. In January 2007, Administrative Law Judge ("ALJ") Richard

Vogel held an administrative hearing on Plaintiff's claim. [R. 345–75.] On July 26, 2007,

the ALJ issued his decision, finding Plaintiff not disabled. [R. 10–25; *see also* R. 390–405

(duplicate).] After the Appeals Council denied Plaintiff's request for review [R. 5–8],

Plaintiff sought judicial review in federal district court. [*See* R. 443–45 (civil docket in case

filed on January 30, 2008).]

On March 5, 2009, the Honorable Henry M. Herlong, Jr., entered an order reversing

the ALJ's decision and remanding the case for further proceedings. [R. 406–21.] Judge

Herlong ordered that, on remand, the ALJ should:

- discuss the combined effects of Plaintiff's severe and non-severe impairments and whether such combined effects met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 [R. 411–12];

- consider all of Plaintiff's impairments in combination to determine her residual functional capacity [R. 412];

- specifically discuss statements from Plaintiff and her husband regarding Plaintiff's memory, concentration, vertigo, and vision and explain and reconsider all of the objective evidence that discredits those statements and symptoms when assessing Plaintiff's residual functional capacity during the relevant time period [R. 418]; and

- reassess the impairments resulting from Plaintiff's closed head injury and, if needed, include all of Plaintiff's credible limitations in the hypothetical questions posed to the vocational expert [R. 420].

On remand, the Appeals Council instructed the ALJ to conduct further proceedings

consistent with Judge Herlong's order. [R. 535.] After a hearing in September 2009 [R.

549–62], the ALJ again denied Plaintiff's claim, issuing his decision on October 20, 2009

[R. 376–89]. The ALJ found Plaintiff had severe impairments—migraine headaches,

depression, and a history of a closed head injury—and non-severe impairments—eye

2

problems, a seizure disorder, and hypothyroidism.[2] [R. 382, Finding 4.]  However, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  [*Id.*, Finding 5.]  Further, the ALJ found Plaintiff had the residual functional capacity to sit for six hours of an eight hour day; stand/walk for two hours of an eight hour day; frequently lift/carry light items; occasionally lift ten pounds; never climb or crawl; occasionally crouch and stoop; and never be exposed to hazards. [R. 383, Finding 6.]  The ALJ also found Plaintiff would be restricted to low-stress work, defined as only occasional decision-making and changes in the work setting, with no exposure to the general public and only occasional interaction with co-workers and supervisors.  [*Id.*]  The ALJ determined Plaintiff was unable to perform her past relevant work [R. 387, Finding 7], but there were jobs that existed in significant numbers in the national economy that Plaintiff could perform [*id.*, Finding 11].

Plaintiff filed this action for judicial review on December 23, 2009.[3]  [Doc. 1.]  Upon motion by the Commissioner, the action was remanded pursuant to sentence six of 42 U.S.C. § 405(g) on May 7, 2010.[4]  [Doc. 13.]  The case was reopened on September 30, 2010 [*see* Doc. 14] and is now ripe for review.

---

[2] In the previous decision, the ALJ found Plaintiff to have only two severe impairments:  migraine headaches and closed head injury.  [R. 16.]  He found Plaintiff had non-severe impairments of depression, vision problems, and hypothyrodism.  [*Id.*]

[3] There is no record that Plaintiff requested Appeals Council review of the ALJ's October 2009 decision.

[4] The Commissioner moved to remand the case pursuant to sentence six of § 405(g) because the transcript could not be located.  [Doc. 12.]  Upon remand, the Commissioner assembled a transcript of the administrative record.  [Doc. 14.]

## THE PARTIES' POSITIONS

Plaintiff alleges the ALJ disregarded the remand order by failing to properly assess the combined effect of Plaintiff's impairments and to conduct a proper credibility analysis. [Doc. 23 at 1.]  Specifically, Plaintiff alleges the ALJ failed to explain why Plaintiff's impairments in combination did not meet or medically equal a listed impairment or have the combined effect of disability.  [*Id.* at 13.]  Plaintiff also argues she is entitled to rely exclusively on subjective evidence to prove the intensity, persistence and severity of her pain symptoms, relying on *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006); Plaintiff contends the ALJ relied on isolated references in the record to determine Plaintiff's complaints were not legitimate.  [*Id.* at 14.]  Further, Plaintiff alleges the Commissioner failed to meet its burden at Step 5 by arbitrarily and without proper reconciliation of contrary evidence deciding not to include Plaintiff's actual limitations in the ALJ's final determination of disability.  [*Id.* at 15.]

The Commissioner argues Plaintiff did not meet her burden of showing she had a combination of impairments that met or medically equaled a listing.  [Doc. 25 at 12.]  The Commissioner also argues the ALJ identified valid reasons for discounting the credibility of Plaintiff's subjective statements.  [*Id.* at 19.]  Finally, the Commissioner argues the limitations presented to the vocational expert were only those limitations that were supported by substantial evidence and that the  ALJ was not required to accept a limitation that was not supported by the evidence.  [*Id.* at 21.]

4

# STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "'allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ),'" not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the

5

evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek  v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the plaintiff's residual

6

functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the plaintiff disabled).   Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision.  *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been

different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find

an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a),; *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

**A.** ***Substantial Gainful Activity***

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, 20 C.F.R. § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  20 C.F.R. § 404.1574–.1575.

**B.** ***Severe Impairment***

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See* 20 C.F.R. § 404.1521.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must

10

adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could

---

[6]Residual functional capacity is "the most [a claimant] can do despite [his] limitations." 20 C.F.R. § 404.1545(e)

perform other work that exists in the national economy.  *See* 20 C.F.R. § 404.1520(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's

---

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a.  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  *Id.*

testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.     Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)). If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic

13

techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence. *Craig*, 76 F.3d at 590. Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See id.* (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d),. In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(d)(2). An ALJ determination coming down on the side of a non-examining, non-

treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(e). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716,

723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig,* 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id*. (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman*, 829 F.2d at 518. The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:

16

...

> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.   Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

17

Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## DISCUSSION

**Relevant Time Period**

The Commissioner has established Plaintiff was not disabled on or before April 23, 2002 based on the denial of Plaintiff's first application for benefits. *See* 20 C.F.R. § 404.921. Plaintiff was insured for benefits through December 31, 2003. [R. 85.] Therefore, to receive benefits, Plaintiff must establish she was disabled between April 24, 2002 and December 31, 2003. *Everett*, 412 F.2d at 843.

**Residual Functional Capacity Assessment**

Plaintiff first argues the ALJ disregarded Judge Herlong's remand order by failing to properly assess the combined effect of Plaintiff's impairments and failing to conduct a proper credibility analysis. The Court agrees. Judge Herlong ordered the ALJ, when assessing Plaintiff's residual functional capacity ("RFC") on remand, (1) to consider all Plaintiff's impairments in combination and (2) to (a) specifically discuss Plaintiff's and her husband's statements regarding Plaintiff's memory, concentration, vertigo, and vision and (b) explain and reconsider all of the objective evidence, if any, that discredits those

18

statements and symptoms. [R. 412, 416.] The ALJ, however, again failed to consider the entire case record or use objective evidence to discredit Plaintiff's allegations. This failure, in turn, prevented the ALJ from properly considering and explaining the combined effects of Plaintiff's impairments.

### Plaintiff's Credibility

To credit a claimant's complaints of pain or other symptoms, although there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself or its intensity. *Walker*, 889 F.2d at 49 (citing *Foster*, 780 F.2d at 1129). The ALJ is required to make credibility determinations about allegations of pain or other nonexertional disabilities, and "such decisions must refer specifically to the evidence informing the ALJ's conclusions." *Hammond,* 765 F.2d at 426. "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." SSR 96-7p, 61 Fed. Reg. 34,483-01, 34,485 (July 2, 1996); *see also Craig*, 76 F.3d at 595 ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."); 20 C.F.R. § 416.929(c)(1)–(c)(2) (outlining the evaluation of pain). If he rejects a claimant's testimony about her pain or physical condition, the ALJ must

19

explain the basis for such rejection to ensure the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir.1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 61 Fed. Reg. at 34,486..

In the 2009 decision, which followed Judge Herlong's remand order, the ALJ again found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." [R. 385.] While Judge Herlong's remand order directed the ALJ "to specifically discuss [Plaintiff's] and [her husband's] statements regarding [Plaintiff's] memory and concentration problems, vertigo, and vision problems" and then "to explain and reconsider all objective evidence, if any, that discredits those statements and symptoms to determine [Plaintiff's] RFC" [R. 418], a comparison of the 2007 and 2009 decisions reveals that, although the ALJ rearranged his discussion of Plaintiff's RFC, the substance of the discussion remains

20

largely unchanged, with some portions repeated verbatim [*compare* R. 19–23, *with* R. 383–87].[8]

The ALJ removed portions of the RFC discussion Magistrate Judge Catoe previously found to be in error.[9]  However, the ALJ failed to include a specific discussion of Plaintiff's memory, concentration, vertigo, and vision or any new rationale for discrediting Plaintiff and her husband's statements regarding those limitations.  In fact, the only additional support the ALJ included in his RFC discussion in the 2009 decision was that Plaintiff's treating neurologist noted Plaintiff "looked great" and her affect had returned to normal in November 2003; there was no indication Plaintiff required emergency treatment or inpatient hospitalization or that her medications caused significant side effects during the relevant period; and Plaintiff's positive response to the relatively conservative course of treatment was inconsistent with a level of severity that would have precluded Plaintiff from sustaining any work activity.  [R. 385–86.]  These statements fail to specifically

---

[8]Because Plaintiff alleged only that the ALJ erred in assessing Plaintiff's credibility, this discussion is limited to Plaintiff's credibility.  However, the Court notes the remand order further directed the ALJ to specifically discuss Plaintiff's husband's statements regarding Plaintiff's memory, concentration, vertigo, and vision and to explain and reconsider the evidence that discredits those statements as well.  Moreover, Magistrate Judge Catoe's report and recommendation found the ALJ erred in discrediting Plaintiff's husband's testimony in the 2007 decision.  [R. 438–39.]  Although the ALJ lengthened his discussion of Plaintiff's husband's testimony in the 2009 decision, the ALJ failed to comply with Magistrate Judge Catoe's report and recommendation and Judge Herlong's remand order with respect to Plaintiff's husband's credibility.

[9]For example, because Magistrate Judge Catoe found evidence in the record supporting Plaintiff's allegations, the 2009 decision did not include the following reasons previously relied upon to discredit Plaintiff in the 2007 decision:

•     lack of evidence to indicate Plaintiff suffered from any eye condition or eye pain;
•     lack of treatment notes regarding weather-related complications;
•     lack of treatment notes regarding an inability to drive;
•     lack of treatment notes regarding vertigo; and
•     lack of evidence to indicate a venous angioma to the left frontal area.

[*See* R. 436–37 (finding evidence in the record to support Plaintiff's testimony where the ALJ found there was no such evidence).]

address memory, concentration, vertigo, or vision.  Moreover, although Judge Herlong's remand order explained that "the absence of objective evidence is insufficient to make a determinative conclusion that [Plaintiff] exaggerated her symptoms" [R. 417] with respect to Plaintiff's concentration, memory, and attention, the ALJ continued to rely on a lack of evidence to discredit Plaintiff's claims in the 2009 decision [R. 385 (stating that Plaintiff's treating neurologist "did not note any limitations in concentration, memory, or attention")].[10] Finally, the ALJ's discussion of Plaintiff's daily activities continues to be one-sided, failing to consider all of the evidence in the record.  [R. 386 (including running errands and shopping in the discussion of daily activities, even though the remand order noted the ALJ failed to mention Plaintiff reported getting lost and being confused while running errands).] Accordingly, for the same reasons included in the remand report and recommendation and order—requiring objective verification of symptoms, relying upon isolated references taken out of context, and failing to consider the entire record—the ALJ failed to properly assess Plaintiff's credibility on remand; this failure impacted the ALJ's consideration of the combined effect of Plaintiff's impairments.

### Combined Effect of Impairments

Once the ALJ finds a claimant has a severe impairment or combination of impairments,[11] the ALJ must consider all of the claimant's impairments, including non-

---

[10]The Court notes the 2009 decision omitted the statement that the ALJ relied on the "lack of objective verification of [Plaintiff's] complaints" [see R. 21 (statement in 2007 decision)]; however, a review of the 2009 decision reveals the ALJ continued to rely on lack of objective verification with respect to Plaintiff's concentration, memory, and attention because he failed to provide any objective evidence in the record to support a finding that Plaintiff was not experiencing these symptoms, instead relying on the lack of notes regarding these symptoms in the treating neurologist's records [R. 385].

[11] As explained above, the ALJ determines whether the claimant has a severe impairment or impairments at Step 2 of the five-step evaluation.

severe impairments, and the limitations imposed by all of the claimant's impairments at the remaining steps of the sequential analysis. *Pittman v. Astrue*, No. 5:08-cv-83-FL, 2008 WL 4594574, at *4 (E.D.N.C. Oct. 10, 2008); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). As stated above, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Walker*, 889 F.2d at 50 ("As a corollary to th[e] rule [that the ALJ must evaluate the combined effect of the claimant's impairments], the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." (citing *Reichenbach v. Heckler*, 808 F.2d 309, 312 (4th Cir. 1985)).

Here, because the ALJ improperly discredited Plaintiff's testimony about the effects of her impairments, the ALJ could not have considered the combined effects of all of Plaintiff's impairments when determining her RFC. Therefore, the ALJ's RFC assessment is in error, and the ALJ's error in assessing Plaintiff's RFC further impacted the ALJ's decision at Step 5 of the sequential analysis.

**Vocational Expert Testimony**

Plaintiff contends the ALJ erred at Step 5 of the sequential analysis because the ALJ relied on the vocational expert's testimony with respect to a hypothetical that did not contain Plaintiff's actual limitations. Because the Court has found the ALJ erred in determining Plaintiff's RFC, and an ALJ must use the RFC assessment to pose hypothetical questions to the vocational expert, the ALJ further erred in relying on the vocational expert's testimony in response to a hypothetical based on the flawed RFC assessment.

As previously stated, once a claimant reaches Step 5 of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that the claimant could perform. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). Here, Plaintiff suffers from nonexertional limitations; therefore, the grids could serve only as guidelines for the ALJ's determination of whether Plaintiff could perform work that exists in the national economy. *See Gory*, 712 F.2d at 931. Where the grids may serve only as guidelines, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a (2001); *see Walker*, 889 F.2d at 49–50.

At the September 11, 2009 hearing, the ALJ proffered the following hypothetical question to the vocational expert:

> [P]lease assume a hypothetical worker the same age as [Plaintiff], let's say at the time of the date of her last insured, which was 44, same education. I don't know if we got into that but that would have been high school graduate with some college . . . [w]ho retains sedentary exertional capacity with the following limitations. No climbing or crawling, occasional crouching and stooping, no exposure to industrial hazards, low stress setting, no more than occasional decision-making or changes in the setting, no exposure to the general public and no more than occasional interaction with co-workers and supervisor in a working—in conjunction or cooperation with others as opposed to simple, physical proximity. Now, can you identify unskilled work, Doctor, that's consistent?

[R. 559–60.] The vocational expert began to testify as to the jobs that would exist for this hypothetical worker. [R. 560.] The ALJ then added an additional limitation to the hypothetical question:

> Doctor, before you, before you go on *I probably should have put in the first hypothetical one more . . . limitation* and that would be an individual requiring no exposure to fluorescent

24

> lighting. . . .Would there be—would, would that eliminate all unskilled sedentary work or would there be some you could identify consistent with that additional limitation?

[*Id.* (emphasis added).][12]  The vocational expert testified that this limitation, inability to be exposed to fluorescent lighting, would eliminate all unskilled sedentary work because fluorescent lighting is virtually everywhere.  [*Id.*]  The ALJ then added a different limitation to the original hypothetical question:

> Now, Doctor, if I included in the RFC another limitation to the effect that the individual's ability to concentrate and to maintain attention at work was impaired for up to 20 percent of the workday, would that eliminate work?

[R. 561.]  The vocational expert testified that this limitation, inability to concentrate and to maintain attention up to twenty percent of the workday, would eliminate all jobs in the national economy.  [*Id.*]  Finally, the ALJ asked the vocational expert how many absences would be tolerated in a month for unskilled work, to which the vocational expert testified no more than three days a month.  [*Id.*]

In his RFC assessment, the ALJ did not include limitations relating to exposure to fluorescent lighting, concentration, or absences from work, although he acknowledged Plaintiff alleged fluorescent lights triggered her migraines, she had problems with her memory and focus, and she had migraines fifteen to twenty days a month.  [R. 385.] However, the ALJ provided no reasoning or discussion as to why these limitations were excluded from the RFC assessment or why he rejected the hypotheticals that included these limitations.  The Court finds this is reversible error.

---

[12]The wording of this addition to the hypothetical suggests the ALJ intended to include this limitation in the initial hypothetical.

For a vocational expert's opinion "to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker*, 889 F.2d at 50 (citations omitted). Moreover, the ALJ must provide sufficient reasoning for a reviewing court to determine whether the ALJ properly applied the law. *See Myers*, 611 F.2d at 982; *see also Smith*, 782 F.2d at 1181–82 (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why). Here, it is unclear from the decision why the ALJ failed to rely on the vocational expert's testimony in response to the hypothetical questions that included Plaintiff's alleged need to avoid florescent lighting, inability to concentrate, or potential to miss more than three days of work a month, which would ultimately result in no work being available for Plaintiff.[13] Accordingly, the Court finds the ALJ erred at Step 5 of the sequential evaluation.

**Remand for Additional Proceedings or for an Award of Benefits**

Plaintiff argues the case should be remanded for an award of benefits. The Court agrees.

Whether to remand for additional proceedings or for an award of benefits is generally approached on a practical level, and the decision rests within the sound discretion of the district court. *Smith v. Astrue*, No. 3:10-66, 2011 WL 846833, at *3 (D.S.C. Mar. 7, 2011) (citing *Edwards v. Bowen*, 672 F. Supp. 230, 237 (E.D.N.C. 1987)).

---

[13]The Court notes the remand order directed the ALJ to "include all impairments that are not in conflict with objective evidence in the hypothetical questions posed to the [vocational expert]." [R. 420.] That the ALJ included these additional limitations in his hypothetical questions indicates that, at least as of the date of the hearing, the ALJ thought these limitations were not in conflict with objective evidence in the record. However, the ALJ's failure to include these limitations in the RFC assessment or to ultimately rely on the vocational expert's testimony in response to these hypothetical questions leaves the Court to question why the ALJ discounted or rejected the hypothetical questions.

An award of benefits is more appropriate when further proceedings would serve no useful purpose. *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1985). Likewise, an award of benefits is appropriate when substantial evidence indicates the claimant is disabled, and the weight of the evidence indicates a remand would only delay the receipt of benefits while serving no useful purpose or a substantial amount of time has already passed. *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir. 1984); *Tennant v. Schweiker*, 682 F.2d 707, 710 (8th Cir. 1982). Further, an award of benefits is appropriate when the Commissioner has had an opportunity to develop the record on an outcome-determinative issue and has failed to produce substantial evidence, *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983); *Tennant*, 682 F.2d at 710–11; *Edwards*, 672 F. Supp. at 237, or where "there is not the slightest uncertainty as to the outcome" and additional proceedings "would be an idle and useless formality," *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969); *see also Barry v. Bowen*, 862 F.2d 869, 1988 WL 124873, at *2 (4th Cir. 1988) (unpublished opinion) (citing *NLRB*, 394 U.S. at 766 n.6). On the other hand, additional proceedings are appropriate where they could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).

The Court has reviewed the record and the parties' filings and finds reopening the record would serve no useful purpose. Plaintiff applied for benefits in February 2005, alleging an onset of disability on December 24, 1998. Because Plaintiff's previous disability application was denied on reconsideration on April 23, 2002, the issue in this case is whether Plaintiff was disabled between April 24, 2002 and December 31, 2003. A substantial amount of time has passed since Plaintiff alleges she became disabled and

27

since she applied for benefits, and this case has already been reversed and remanded for further administrative action yet the Court has found reversible error again. Further, as discussed in detail below, substantial evidence in the record as a whole indicates the ALJ should have included at least two of the limitations from the additional hypothetical questions posed to the vocational expert—no exposure to fluorescent lighting and an inability to concentrate or maintain attention at work for up to twenty percent of the workday.[14] Because the vocational expert opined that with these limitations no jobs would be available for Plaintiff, remand would only delay the receipt of benefits while serving no useful purpose because there is no additional information to be developed in the record to remedy any defects. Accordingly, in this case, an outright award of benefits is appropriate.

As previously noted, the ALJ acknowledged Plaintiff's allegations with respect to exposure to fluorescent lighting both in the hearing and in the decision, and the ALJ included this limitation in a hypothetical question posed to the vocational expert. [R. 386, 560.] However, the ALJ failed to address this alleged limitation in his discussion of

---

[14]With respect to the third additional limitation posed by the ALJ—attendance issues—the record is unclear with respect to how many days a month Plaintiff might have missed work due to migraines during the relevant time period. The record does not contain many records dated during the relevant time period. On the one hand, a number of the records during the relevant time period indicated that the frequency of migraines decreased between April 24, 2002 and December 31, 2003. [See R. 223 (decreased frequency of migraines as of June 26, 2002); R. 340 (remarkable improvement with headaches as of December 2, 2002); R. 339 (doing better as of April 28, 2003).] On the other hand, Plaintiff missed jury duty on November 24, 2003 because of severe migraines. [R. 338.] Accordingly, the record would need to be developed further with respect to the number of potential absences from work during the relevant time period because the vocational expert testified that employers would tolerate no more than three absences a month. However, because the Court finds substantial evidence supports an award of benefits based on the fluorescent lighting and concentration limitations, remanding the case for development of the record on the attendance issue would serve no useful purpose and is unnecessary.

28

Plaintiff's RFC or of jobs available in the national economy that Plaintiff could have performed.

Record evidence corroborates Plaintiff's claim that fluorescent lighting triggered her migraines. Both Plaintiff and her husband testified that fluorescent lighting triggers Plaintiff's migraine headaches. [R. 554, 557; *see* SSR 96-7p at 34,485 (stating that an "adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms").] Additionally, the record establishes Plaintiff complained of photophobia on several occasions. [*See, e.g.*, R. 181, 321, 331; *see also* R. 227 (allergic to photosensitizing drugs); R. 224 (allergic to photosensitizing drugs and wearing sunglasses in exam room); R. 323 (requested dark, quiet room for neurology appointments).] Photophobia is an intolerance to light or painful sensitiveness to strong light. *Photophobia Definition*, Merriam-Webster.com, http://www.merriam-webster.com/medlineplus/photophobia (last visited August 25, 2011). "Common causes of photophobia include migraine headaches, cataracts, or severe ophthalmologic diseases such as uveitis or corneal abrasion." *Photophobia*, Wikipedia.org, http://en.wikipedia.org/wiki/Photophobia (last visited August 25, 2011) (citing Hazin R, Abuzetun JY, Daoud YJ, Abu-Khalaf MM (July 2009). "Ocular complications of cancer therapy: a primer for the ophthalmologist treating cancer patients". *Curr Opin Ophthalmol* 20 (4): 308–17). Additionally, there is no objective evidence in the record to support a finding Plaintiff was not experiencing a sensitivity to fluorescent lights. In response to a hypothetical question that included a limitation requiring no exposure to fluorescent lighting, the vocational expert testified that this limitation would eliminate all jobs because

29

fluorescent lighting is virtually everywhere. [R. 560.] Accordingly, a remand would serve no useful purpose because the record substantiates Plaintiff and her husband's allegations that she has a sensitivity to fluorescent lights, and a vocational expert has testified that a limitation of no fluorescent light exposure would eliminate all jobs in the economy.

With respect to Plaintiff's inability to concentrate and/or focus, the ALJ again acknowledged Plaintiff's allegation both in the hearing and in the decision and included this limitation in a hypothetical question posed to the vocational expert. [R. 385, 561.] However, the ALJ failed to specifically discuss concentration in the discussion of Plaintiff's RFC, instead merely stating that Plaintiff's treating neurologist did not note any limitations related to concentration during the relevant time period. [R. 385.] In the discussion of jobs available in the national economy, the ALJ mentioned in a footnote that, although he posed a hypothetical question to the vocational expert that included memory, concentration, and attention impairments, he did not find this additional limitation applied in this case, though the ALJ failed to provide any rationale for that finding. [R. 388.]

Record evidence corroborates Plaintiff's claim that she had problems with concentration and attention. The report of consultative examining psychologist Cary A. Weber, Ph.D., and the neuropsychological evaluation conducted by Brian L. West, Ph.D., demonstrate Plaintiff suffered from difficulties with sustained attention and concentration.[15]

---

[15]The Court notes these medical records are outside the specific time frame of April 24, 2002 through December 31, 2003. [*See* R. 196–201 (indicating the report is based on a September 25, 2001 examination), 290–94 (indicating the evaluation occurred on June 29, 2005).] However, evidence should not be disregarded merely because an evaluation occurred outside the relevant time period so long as it may be relevant to prove a disability during the relevant time period. *See Cox v. Heckler*, 770 F.2d 411, 413 (4th Cir. 1985) (finding remand proper to consider post-insured status evidence where the record demonstrated that the claimant had a progressively deteriorating lung condition that may have reached a disabling degree by the time the claimant's insured status expired); *Moore v. Finch*, 418 F.2d 1224 (4th Cir. 1969) (finding it was error for the adjudicator not to consider reports of medical evaluations subsequent to the expiration of the claimant's insured period of coverage as evidence of possible earlier and progressive degeneration); *Minor v. Astrue*,

[R. 196–201, 290–94.]  Additionally, there is no objective evidence in the record to support a finding Plaintiff was not experiencing poor concentration.  In response to a hypothetical question that included a limitation that the individual's ability to concentrate and to maintain attention at work was impaired for up to twenty percent of the workday, the vocational expert testified that this limitation would eliminate all jobs.  [R. 561.]  Accordingly, a remand would serve no useful purpose because the record substantiates Plaintiff's allegations that she has problems with concentration, and a vocational expert has testified that a limitation of no fluorescent light exposure would eliminate all jobs in the economy.

## CONCLUSION

Wherefore, based upon the foregoing, the decision of the Commissioner is REVERSED pursuant to sentence four of 42 U.S.C. § 405(g) and  the case is REMANDED to the Commissioner for an award of benefits to Plaintiff based on a disability commencing April 24, 2002.

---

No. 08-2175, 2010 WL 3294411, at *4 (D. Md. Aug. 20, 2010) (finding evidence postdating a claimant's last date insured was still relevant to determining if the claimant was disabled during the relevant time period where the claimant's condition was based on a diagnosis made before the date last insured); *Haskins v. Astrue*, No. 08-cv-1107, 2010 WL 3338742, at *6 (N.D.N.Y. Apr. 23, 2010) (finding that even though a physician did not treat the claimant before his date last insured, the physician may have probative evidence of functional limitations during the insured period where logic dictates that the condition predated the examination or where the evidence may disclose the severity and continuity of impairments); *Coulbourn v. Astrue*, No. 07-0095, 2008 WL 2413169, at *4 (E.D. Cal. June 12, 2008) (stating that medical reports created outside the relevant time period may be relevant when there is no evidence that the condition had changed significantly during the interim and indicating a court should "look at the substance of the report, the type of injury in question, the treatments received, and the like to acquire a valid judgment on the doctor's report"). Here, logic dictates that if evaluations both before and after the relevant time period indicated poor concentration and/or attention, then Plaintiff most likely suffered an inability to concentrate during the relevant time period between the two evaluations.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States Magistrate Judge

September 22, 2011
Greenville, South Carolina